## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| ST. BERNARDINE MEDICAL CENTER,<br><br>      Plaintiff,<br><br>      v.<br><br>HEALTH CARE SERVICE CORPORATION, a Mutual Legal Reserve Co. d.b.a. BLUE CROSS AND BLUE SHIELD OF ILLINOIS and BLUE CROSS AND BLUE SHIELD OF TEXAS, and DOES 1 THROUGH 25, INCLUSIVE,<br><br>      Defendants. | Case No. 24-cv-02906<br><br>Judge Martha M. Pacold |

## MEMORANDUM OPINION AND ORDER

Before the court are plaintiff St. Bernardine Medical Center's ("SBMC") motion for reconsideration of this court's denial of SBMC's motion to remand, [36], and defendant Health Care Service Corporation's ("HCSC") motion to dismiss for failure to state a claim, [10].[1] For the reasons below, the motion for reconsideration, [36], is denied, and the motion to dismiss, [10], is granted in part and denied in part.

## BACKGROUND

The facts giving rise to this action are summarized in the court's prior ruling from the bench denying SBMC's motion to remand. [36-1] (transcript of ruling from the bench attached as Exhibit A to the motion for reconsideration). SBMC sued HCSC for breach of implied contract and quantum meruit arising from HCSC's alleged failure to reimburse SBMC for medical care that SBMC rendered to three patients ("Patients 1, 2, and 3").[2] [1-1] ¶¶ 31, 33, Exhibit A. According to the complaint, SBMC

---

[1] Bracketed numbers refer to docket entries and are followed by page and / or paragraph number citations. Page numbers refer to the CM/ECF page number.

[2] The complaint also identifies "Does 1 through 21," unnamed individuals, each of whom acted as an "agent, employee, employer, joint venturer, representative, alter ego, subsidiary and/or

had a written contract with Anthem Blue Cross ("Anthem"), which is not a party to this action. *Id.* ¶ 27. This contract required SBMC to provide treatment to patients with plans "financed, sponsored, and/or administered by member companies belonging to the national Blue Cross Blue Shield Association, of which HCSC is one such member." *Id.* ¶¶ 27–29. But HCSC was not a signatory to the contract between Anthem and SBMC. *Id.* ¶ 28. While SBMC was contractually obligated to treat patients with health plans sponsored or administered by HCSC, SBMC had no express contract with HCSC requiring HCSC to reimburse SBMC for the treatment. *Id.* ¶¶ 27–29, 31, 33. Thus, SBMC claims that "an implied contract arose between SBMC and HCSC each time one of the Patients" identified himself as belonging to a health plan financed, sponsored, or administered by HCSC. *Id.* ¶¶ 31–32. This implied contract required HCSC to reimburse SBMC for medically necessary treatment rendered to HCSC's patients. *Id.* ¶ 34. According to the complaint, SBMC provided medically necessary treatment for Patients 1, 2, and 3 between 2019 and 2022. *Id.* ¶ 11. HCSC, however, failed to reimburse SBMC for the treatment of these patients. *Id.* ¶ 18.

SBMC sued HCSC in the Circuit Court of Cook County, asserting counts for breach of implied-in-fact contract and quantum meruit (pled in the alternative) under Illinois law. [1-1]. HCSC removed the case to this court, [1], and filed a motion to dismiss. [10]. SBMC then filed a motion to remand, arguing that this court lacked subject matter jurisdiction over the case. [15]. The court stayed briefing on the motion to dismiss until it decided the motion to remand. [19]. In a telephonic ruling from the bench, the court denied SBMC's motion to remand. [34]. The court set a briefing schedule on the motion to dismiss. [34]. SBMC then filed the current motion for reconsideration of the court's denial of the motion to remand. [36]. Both the motion for reconsideration and the motion to dismiss are now fully briefed.

## DISCUSSION

Because it affects whether the court has subject matter jurisdiction, the court first evaluates SBMC's motion for reconsideration of the court's December 18, 2024, ruling from the bench denying SBMC's motion to remand. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) ("Without jurisdiction the court cannot proceed at all in any cause." (quotation omitted)).

## I. Motion for Reconsideration

Motions for reconsideration are disfavored. *Alice F. v. Health Care Serv. Corp.*, 2019 WL 11626480, at *1 (N.D. Ill. June 17, 2019). District courts have "discretion to entertain motions to reconsider prior decisions," but the movant bears "a heavy burden" to show that reconsideration is appropriate. *Id.* (citations omitted).

---

partner of one or more of the other defendants." [1-1] ¶ 8.

"[M]otions for reconsideration will be granted only where 'the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension.'" *Id.* (quoting *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990)). "[A] motion for reconsideration [is] an inappropriate medium to 'rehash' past arguments . . . or revisit improvident strategic decisions made earlier." *Id.* (citations omitted). Reconsideration motions are also "not an opportunity to raise new arguments" that could have been made earlier. *Id.* at *2 (quoting *Isunza v. Lynch*, 809 F.3d 971, 973 (7th Cir. 2016)).

SBMC urges the court to reconsider its denial of the motion to remand for two reasons: First, SBMC argues that a recent district court decision supports remand. [36] at 2. Second, SBMC argues that the court's ruling made a manifest error of fact when it determined that no preauthorization had occurred as to Patient 1. *Id.* at 5. Neither of these arguments is persuasive.

To begin with, SBMC cites a recent district court decision, *PIH Health Hosp.–Whittier v. Health Care Serv. Corp.*, 2024 WL 5220177 (N.D. Ill. Dec. 26, 2024). In that case, the district court held that the plaintiff's implied contract and quantum meruit claims were not completely preempted and remanded the case to state court. *Id.* at *1. Because *PIH Health* concerned allegations similar to SBMC's allegations in this case, SBMC contends that this court's ruling "creates inconsistent rulings in the Northern District of Illinois regarding the same allegations." [36] at 2.

This argument is not persuasive. To the extent there is a split of authority, it predates the court's decision. *Compare Regents of Univ. of Cal. on Behalf of UCLA Health Sys. v. Health Care Serv. Corp.*, 2024 WL 2209595, at *4–5 (N.D. Ill. May 14, 2024), *with John Muir Health v. Health Care Serv. Corp.*, 2023 WL 4707430, at *4 (N.D. Ill. July 24, 2023), and *Mercy Hosp. of Folsom v. Health Care Serv. Corp.*, 2024 WL 3275509, at *5–6 (N.D. Ill. July 2, 2024). In any event, the decisions of other district courts do not bind this court. *Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) (quotation omitted). Thus, SBMC's first argument does not persuade the court that it made a manifest error of law or fact in its original ruling.

SBMC's second argument is that the court's ruling "constitutes a manifest error of fact and error of apprehension." [36] ¶ 30. In the court's December 18, 2024 ruling from the bench, the court held that, as to Patient 1's insurance claim, SBMC's implied contract and quantum meruit claims concern a dispute over whether the patient, and by extension the provider, has a "right to payment" under Patient 1's ERISA plan. [36-1] at 15:1–7. *See generally Mercy Hosp. of Folsom*, 2024 WL 3275509, at *5 (describing the "rate of payment" versus "right to payment" framework). Accordingly, the court held that SBMC's claims as to Patient 1 are completely preempted. [36-1] at 21:1–20.

In making this determination, the court distinguished *Regents of the University of California on Behalf of UCLA Health v. Health Care Services Corporation*, an unpublished district court case cited by SBMC. In this court's ruling from the bench, the court noted that in *Regents*, "prior to rendering services, UCLA Health sought and received authorization from HCSC to admit the patients and provide medical treatment." [36-1] at 20:9–12 (quoting *Regents*, 2024 WL 2209595, at *1). By contrast, in this case, no such authorization occurred as to Patient 1. *Id.* at 20:12–23.

To support its finding that no prior authorization occurred, the court cited two pieces of evidence. First, the court cited a spreadsheet attached to the complaint as "Exhibit A." *Id.* The spreadsheet includes a column titled "issue" and lists the word "AUTHORIZATION" in the row that corresponds to Patient 1's claim. *See* [1-1] ¶ 11, Exhibit A. Second, the court cited a letter HCSC sent to SBMC on June 1, 2022. [36-1] at 20:12–23. The letter purported to deny preauthorization of treatment for Patient 1 due to "Insufficient Information." *See* [1-6] at 2 ("This letter is written notification that preauthorization of benefits has been denied as described below.").

SBMC claims that this court improperly relied on the letter to determine that no preauthorization occurred as to Patient 1. Specifically, SBMC points out that the letter is dated June 1, 2022, nearly five days after the treatment of Patient 1 began on May 28, 2022. [36] ¶ 14. SBMC claims that contrary to this court's determination, on May 28, 2022, SBMC sought, and HCSC provided, preauthorization of Patient 1's treatment. [36] ¶ 30.

To support its claim that HCSC authorized treatment on May 28, SBMC submits the declaration of Anita Chou, the CFO of SBMC. [36-6] ¶ 1. Ms. Chou examined SBMC's records, and determined that on May 28, 2022, SBMC contacted HCSC and notified HCSC that the hospital had admitted Patient 1. *Id.* ¶ 6(b)–(c). Ms. Chou recounts that a representative of SBMC spoke with an HCSC representative named "Krista" who "provided an authorization number ("AMR822298927") on the date of admission on May 28, 2022 for 5 days." *Id.* ¶ 6(b). According to Chou, over the next few days, SBMC faxed Patient 1's medical records and information to HCSC. *Id.* ¶ 6(b)–(c). It was not until June 1, 2022, nearly five days later, that HCSC sent the letter denying authorization. [1-6]. According to SBMC, this shows that HCSC did, in fact, preauthorize treatment. [36] ¶ 30. SBMC contends that, rather than denying authorization, the June 1 letter rescinded the authorization HCSC had already granted on May 28. *Id.*

In response to SBMC's argument, HCSC provides the declaration of Jo McMillin, an HCSC supervisor responsible for overseeing the collection of documents related to certain HCSC members. [39-2] ¶ 2. McMillin admits that someone named "Debbie" at SBMC called "Krista" at HCSC to request authorization for treatment of Patient 1. *Id.* ¶¶ 9–10. But according to McMillin, this call occurred on May 31, 2022,

4

*not* May 28, 2022. *Id.* ¶ 10. As support, HCSC provides internal records, stored on a computer system called "Smart UM Requests," showing that a caller identified as "Debbie" from SBMC contacted "Krista" at HCSC on 5/31/2022 at 12:52 p.m. *See* [39-2] at pp. 8–13 (Exhibit 2-A).

HCSC provides a transcript of the call between employees at SBMC and HCSC on May 31, 2022. [39-3]. On the call, someone named Debbie identified herself as calling on behalf of SBMC. *Id.* at 5. The other caller, named Krista, identified herself as a "customer advocate" for Blue Cross Blue Shield. *Id.* On the call, Debbie explained that she was calling to "pre-cert an inpatient admission." *Id.* According to McMillin, preauthorization is sometimes referred to as "pre-certification." [39-2] ¶ 9. Krista asked for the patient's medical records and informed Debbie that the request was "going to pend for review." [39-3] at 7. Krista then provided a "pending authorization number." *Id.* at 8. According to McMillin, a pended authorization number "means that pre-authorization review is pending, but the pre-authorization request is not yet approved." [39-2] ¶ 12. To obtain approval, the provider must "submit clinical information to support the authorization request and establish medical necessity." *Id.* Thus, according to HCSC, there was no preauthorization on May 28; rather, on May 31, 2022, HCSC explicitly informed SBMC that authorization was pending.

Aside from the declaration of Anita Chou, SBMC provides no documentary evidence that any call or preauthorization occurred on May 28, 2022. According to McMillin, a search of HCSC's pre-authorization notes as to Patient 1 only shows the May 31 call. *Id.* ¶ 9. The Smart UM Requests records submitted by HCSC only show the May 31 call. *Id.* at p. 13.

Additionally, SBMC's own appeal of its denial of coverage as to Patient 1 undermines the argument SBMC makes now. HCSC provides records of SBMC's appeal of the denial of coverage with a policy number corresponding to Patient 1's insurance policy number. *See id.* ¶¶ 8, 18, pp. 16–64 (Exhibit 2-B). SBMC does not dispute the authenticity of the appeal document, nor does it refute the declaration of McMillin that the document is a "true and accurate copy of St. Bernadine's [*sic*] appeal" filed on November 23, 2022. *Id.* ¶ 18. The appeal also includes a page titled "Appointment of Representation" that contains what purports to be the signature of Anita Chou certifying that SBMC is the provider bringing the appeal. *Id.* at p. 38. Additionally, the "U22151ATCT" authorization number stated in the appeal matches the pended authorization number referenced in the transcript of the May 31 call. *See* [39-3] at 8. It also matches the "Request ID" number referenced in the June 1 letter denying preauthorization. *See* [1-6] at 2. Thus, the transcript of the call, the appeal, and the June 1 denial letter all pertain to the same claim.

In the appeal, a representative of SBMC recounts:

> St. Bernardine Medical Center sent BlueCross (BC) notification of inpatient service and attempted to obtain prior authorization, on 05/28/2022. Notification and information continued to be faxed to BC daily. On 05/31/2022, St. Bernardine called to BC and spoke to Krista, who gave Authorization U22151ATCT for 5 days.

*Id.* at p. 18. SBMC's own account states that on May 28, SBMC "attempted" to obtain authorization; it never says that HCSC granted SBMC's request or that any call occurred on May 28. On the contrary, the appeal states that the call with "Krista" occurred on May 31, not May 28. This undermines SBMC's argument that it obtained preauthorization from HCSC on May 28.

Last, the Chou declaration identifies "AMR822298927" as the "authorization number" allegedly provided by HCSC on May 28. [36-6] ¶ 6(b). But both the appeal and the McMillin declaration suggest that this number reflects Patient 1's *insurance policy number*, not the authorization number. *See* [39-2] ¶ 8, p. 17. The appeal lists AMR822298927 as Patient 1's "Insurance Policy #." *Id.* at p. 17. As explained by McMillin, the prefix "AMR" "refers to the sponsor of the Plan—American Airlines, Inc. The numerical portion refers to the unique subscriber ID or policy number assigned to Patient 1." *Id.* ¶ 8. Additionally, as explained above, the transcript and the appeal identify "U22151ATCT" as the pended authorization number. And the June 1 letter identifies the same number as the "Request ID." [1-6] at 2. This undermines SBMC's claim that HCSC provided preauthorization on May 28, 2022.

In light of this evidence, the court is not convinced that it manifestly erred in concluding that no preauthorization occurred as to Patient 1. There is evidence suggesting that the only call that occurred between SBMC and HCSC was on May 31, 2022, not May 28. The transcript of the May 31 call provided by HCSC shows that HCSC provided a "pended authorization" number and explicitly informed SBMC that the request for authorization was "going to pend for review," not that preauthorization was approved. [39-3] at 6. And contrary to SBMC's argument, there is evidence suggesting that, on June 1, that is, a day after the call, HCSC sent SBMC a letter *denying* preauthorization, not rescinding it. *See* [1-6] (preauthorization denied due to "Insufficient Information"). Thus, the court is not convinced that it manifestly erred in concluding that no preauthorization occurred as to Patient 1.

For these reasons, SBMC's argument that the court erred when it cited *Mercy Hospital of Folsom* in its December 18 ruling is also unpersuasive. SBMC argues that *Mercy Hospital of Folsom* is distinguishable. [36] ¶ 31. SBMC notes that in *Mercy Hospital of Folsom*, the provider was given a "pended authorization number." *See* 2024 WL 3275509, at *2. SBMC argues that this case is different because in this case authorization was requested by SBMC and given by HCSC. [36] ¶ 30. But, as explained above and in this court's prior ruling, no such authorization occurred as to Patient 1. Moreover, the transcript of the May 31 call shows that, like in *Mercy*

*Hospital of Folsom*, HCSC only provided a pended authorization number to SBMC. [39-3] at 6. Thus, the court did not err in citing *Mercy Hospital of Folsom*, and in any event, that case is one of several cases the court cited in support of its ruling.

Finally, even if some form of preauthorization did occur (it did not), all that would show is that this case is similar to *Regents*, where the court granted a motion to remand based in part on allegations of preauthorization of treatment. But *Regents* is not binding precedent. Contrary to SBMC's claim that *Regents* is "controlling and undistinguished," precedent, [36] ¶ 7, *Regents* does not decide this case.

Because the court is not convinced that it made any manifest error of law or fact in its December 18, 2024, ruling from the bench, SBMC's motion for reconsideration, [36], is denied.

## II. Motion to Dismiss

HCSC moves to dismiss the complaint for failure to state a claim. HCSC asserts two grounds for dismissing the complaint: First, HCSC argues that SBMC's implied contract and quantum meruit claims are conflict preempted under ERISA § 514. [11] at 19. Second, HCSC argues that to the extent SBMC's claims are not conflict preempted, the claims are not plausible. *Id.* at 11, 16.

To begin with, HCSC argues that because the claims as to Patient 1 are completely preempted under ERISA § 502(a), the claims are also conflict preempted under § 514, and therefore dismissal is warranted. [11] at 20 n.8; [40] at 1 (citing *Cortes v. Midway Games, Inc.*, 2004 WL 2367738 (N.D. Ill. Oct. 15, 2004)).

This argument is not persuasive. *Complete* preemption under § 502(a) and *conflict* preemption under § 514 are distinct concepts. "Complete preemption under § 502(a) is solely a jurisdictional issue, while the defense of 'conflict preemption' is much broader because § 514 is much broader than § 502(a)." *Jass v. Prudential Health Care Plan, Inc.*, 88 F.3d 1482, 1492 n.8 (7th Cir. 1996) (citations omitted). When a court finds that a claim is completely preempted, the claim is preempted only "in the sense that it has been replaced by federal law—but this happens because federal law takes over all similar claims, not because there is a preemption defense." *Lehmann v. Brown*, 230 F.3d 916, 919 (7th Cir. 2000) (citation omitted).

Thus, complete preemption does not imply conflict preemption. *McDonald v. Household Int'l, Inc.*, 425 F.3d 424, 428 (7th Cir. 2005) ("The district court thought that the consequence of a decision that the McDonalds were bringing a suit that fell within the territory covered by ERISA had to be either dismissal under Rule 12(b)(6) or an amendment of the complaint. This was error."). Rather, a finding of complete preemption means that the court must recharacterize the preempted claim as arising under ERISA. *See Jass*, 88 F.3d at 1487. A claim that is completely preempted "is considered, from its inception, a federal claim." *Sarauer v. Int'l Ass'n of Machinists &*

*Aerospace Workers, Dist. No. 10*, 966 F.3d 661, 669 (7th Cir. 2020) (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392–93 (1987)).

Thus, contrary to HCSC's argument, the court may not dismiss the implied contract and quantum meruit claims as to Patient 1 solely on the ground that the claims are completely preempted. Treating the claims as to Patient 1 as arising under ERISA, the question remains whether the facts "alleged could, under the . . . standard that applie[s] to Rule 12(b)(6) motions, support any kind of relief." *McDonald*, 425 F.3d at 428; *Buie v. Maul Excavating, Inc.*, 2018 WL 9651503, at *2 (S.D. Ill. Jan. 5, 2018) ("[E]ven though ERISA preempts the state-law version of Plaintiff's tortious interference claims, this Court must determine whether ERISA itself permits Plaintiff to bring an ERISA-based tortious interference claim." (citation omitted)).

When reviewing a motion to dismiss under Rule 12(b)(6), the court "accept[s] as true all factual allegations in the complaint and draw[s] all permissible inferences in plaintiffs' favor." *Boucher v. Fin. Sys. of Green Bay, Inc.*, 880 F.3d 362, 365 (7th Cir. 2018). A complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[N]aked assertion[s] devoid of further factual enhancement" are insufficient. *Id.* (quoting *Twombly*, 550 U.S. at 557).

Here, construing the implied contract and quantum meruit claims as a denial of benefits claim under ERISA § 502(a), SBMC fails to state a claim as to Patient 1. As explained in this court's prior ruling from the bench, SBMC is an assignee of Patient 1's ERISA plan. SBMC seeks reimbursement for treating Patient 1. At least one other court has construed similar allegations as asserting a claim for denial of benefits under Section 502(a). *See John Muir Health*, 2023 WL 4707430, at *5 (recharacterizing completely preempted implied contract and quantum meruit claims as arising under ERISA § 502(a)). Thus, the court construes SBMC's claim as a denial of benefits claim under ERISA § 502(a).

Section 502(a), 29 U.S.C. § 1132(a), provides that a beneficiary may sue "to recover benefits due to him under the terms of his plan." § 1132(a)(1)(B). "The first and critical allegation" of a § 502(a) claim is that the "plaintiff is a participant or beneficiary entitled to benefits under the terms of an employee-benefits plan." *Brooks v. Pactiv Corp.*, 729 F.3d 758, 764 (7th Cir. 2013). "[P]laintiffs alleging claims under 29 U.S.C. § 1132(a)(1)(B) for plan benefits need not necessarily identify the specific language of every plan provision at issue to survive a motion to dismiss under Rule 12(b)(6)." *Griffin v. TeamCare*, 909 F.3d 842, 845 (7th Cir. 2018) (alteration in original) (quotation omitted). But courts have held that the complaint must "provide the court with enough factual information to determine whether the services were indeed covered services under the plan." *Smith on behalf of Smith v. Health Care Serv. Corp.*, 2021 WL 963814, at *4 (N.D. Ill. Mar. 15, 2021) (quoting *LB Surgery Ctr.,*

*LLC v. United Parcel Serv. of Am., Inc.*, 2017 WL 5462180, at *2 (N.D. Ill. Nov. 14, 2017)). For example, in *Griffin v. TeamCare*, the Seventh Circuit held that the plaintiff stated a claim under § 502(a) when the plaintiff alleged that her insurance company underpaid for her medical care. *See* 909 F.3d at 844–46. Though the plaintiff did not identify a specific term in the plan establishing coverage, the complaint alleged that the healthcare plan partially paid the plaintiff. *Id.* "This render[ed] plausible [plaintiff's] allegations her services *were* covered, and she was entitled to compensation." *Id.* (citation omitted).

Here, the complaint fails to allege facts showing that Patient 1, and by extension SBMC, was entitled to benefits under the terms of an employee-benefits plan. The complaint alleges that SBMC rendered "medically necessary services" to Patient 1. [1-1] ¶ 14. But the complaint does not say what those services were. *See Mission Toxicology, L.L.C. v. UnitedHealthcare Ins. Co.*, 2018 WL 2222854, at *6 (W.D. Tex. Apr. 20, 2018) (information regarding "(1) the insured's name; (2) the plan or the terms of the insured's plan that was allegedly violated; and (3) the services provided under the plan" is "paramount" to sufficiently state a claim for ERISA benefits). Moreover, there is no allegation that the services SBMC provided to Patient 1 were covered under Patient 1's ERISA plan. And unlike in *Griffin*—where the court held that the plaintiff stated a claim based on the plaintiff's allegation that the defendant partially paid for the services—SBMC's complaint contains no allegation of partial payment to suggest that the services were covered under the plan. Rather, the complaint alleges that HCSC paid zero dollars for the treatment. [1-1] ¶ 44. Thus, there are no allegations showing that Patient 1 was "entitled to benefits under the terms of an employee-benefits plan." *Brooks*, 729 F.3d at 764. This is a "critical" omission that renders an ERISA claim as to Patient 1 implausible. *Id.*; *see also Smith*, 2021 WL 963814, at *4 (ERISA plaintiff failed to state a claim when the plaintiff did not "allege that she was entitled to the benefits under the Plan that she did not receive").

Accordingly, the ERISA claim is dismissed without prejudice as to Patient 1. *See Jass*, 88 F.3d at 1491 (affirming dismissal of complaint because plaintiff "failed to request relief available under ERISA" but determining that plaintiff "should be given the opportunity to amend her complaint to request appropriate relief under § 502(a)" because the court had "recharacterized her complaint as one alleging a denial of benefits"). The court will allow SBMC to amend the complaint to state a claim under ERISA. *See Bausch v. Stryker Corp.*, 630 F.3d 546, 562 (7th Cir. 2010). ("Generally, if a district court dismisses for failure to state a claim, the court should give the party one opportunity to try to cure the problem . . . .").

A different analysis applies to SBMC's implied contract and quantum meruit claims as to Patients 2 and 3. The court has not determined that the implied contract and quantum meruit actions are completely preempted as to Patients 2 and 3. The court clarified in its December 18, 2024, ruling from the bench that to the extent the

claims as to Patients 2 and 3 are not completely preempted, the court would exercise supplemental jurisdiction over the claims. [36-1] at 22:21–23:7.

But because the court has dismissed the federal claim, "the court may (and indeed, ordinarily should) kick the case to state court." *Royal Canin U. S. A., Inc. v. Wullschleger*, 604 U.S. 22, 32 (2025). "[O]nly in unusual cases may a district court exercise its discretion to assert its supplemental jurisdiction" once the federal claims have fallen out of the case. *Burritt v. Ditlefsen*, 807 F.3d 239, 252 (7th Cir. 2015) (citation and internal quotation marks omitted)). Thus, absent a plausible federal claim as to any patient, the court is inclined to decline supplemental jurisdiction over the state law claims as to Patients 2 and 3, but will not consider whether to remand the case to state court unless and until SBMC files an amended complaint and the court determines whether it states a plausible federal claim. *See Porch v. Univ. of Illinois at Chicago, Sch. of Med.*, 2022 WL 3082353, at *7 (N.D. Ill. Aug. 3, 2022).

## CONCLUSION

For the foregoing reasons, SBMC's motion for reconsideration, [36], is denied. HCSC's motion to dismiss, [10], is granted in part and denied in part as follows:

- As to Patient 1, that is, "Claim No. 1" identified in Exhibit A of the complaint, the motion to dismiss is granted. As to Patient 1, the complaint is dismissed without prejudice. If SBMC believes it can address the issues identified here, SBMC may file an amended complaint by April 17, 2025.

- As to Patients 2 and 3, that is, "Claim No. 2" and "Claim No. 3" identified in Exhibit A of the complaint, the motion to dismiss is denied. Because the court has dismissed all the federal claims in this case, the court would otherwise be inclined to decline supplemental jurisdiction over the remaining state law claims (that is, the claims as to Patients 2 and 3), but the court will not reach the issue of remand to state court unless and until SBMC files an amended complaint and the court determines whether it states a plausible federal claim.

- If SBMC does not file an amended complaint by the deadline set in this decision or the court finds that SBMC fails to state a viable federal claim in its amended complaint, the court will dismiss the federal claim (that is, the claim as to Patient 1) with prejudice and remand the remaining claims (that is, the claims as to Patients 2 and 3) to state court. *See, e.g.*, *Doe v. Grosch*, 2017 WL 3970515, at *4 (N.D. Ill. Sept. 8, 2017).

Date: March 27, 2025 /s/ Martha M. Pacold